The next case will be Salway v. Norris 218055 . . How's that? Is that okay? Great. Thank you. Let's wait until they shut that door. Okay. Good morning, your honor, honors. May it please the court and counsel. My name is Scott Mitchell Guthrie. I go by Mitch. I represent Travis Salway, the appellant in this matter. I want to throw in just a little side note. I'm from the University of Kansas, 93, so I feel like I'm in good company in this room today. Law school. With two graduates who were sworn in this morning. We won't hold that against you. I hope not. I guess I had a moment of pride in that moment. So, thank you. We are appealing the trial court magistrate's ruling that qualified immunity was appropriate in this case. Officer Norris was given qualified immunity for using his fist and breaking Travis Salway's nose while Travis Salway was handcuffed behind his back, laying on his broken hand. A broken hand where the finger was protruding through the skin and had been doing so for an hour while these events unfolded. By facts, I'd like to start, I can start anywhere, and if the court has concerns about maybe some of the events that happened earlier, I'm happy to address them. Well, I think the trial court agreed with you that the force was excessive, but said it's not clearly established. Right? I think so. And I think for me, that's a serious question given the restraints that have been placed on us by Supreme Court authority that we can't just tick off the gram factors and say, well, if you had applied these gram factors, officer, you would have known that was too much force. But rather, we've got to find a case from the Supreme Court or the Tenth Circuit published that gives the facts that would have put every reasonable officer on notice. So for me, that's the critical part. That's fair. I don't disagree at all. Thank you. I think that helps focus the conversation. This is one of those things, right? As a country, we've given qualified immunity to officers, and it costs us a lot. It costs us a lot as citizens to give them the qualified immunity. And so we're constantly evaluating cases and evaluating an officer's conduct based upon the prior published opinions. That's the standard. And to make it even more difficult, we often skip the first step so you don't have a lot of published opinions that answer the question. Right. If I could just stand here, I could say that this is wholly one of the most backward tests that I can envision ever being created and almost just let's set up an impossible task to start with because the first case, there wouldn't be any published opinions outlining illegal conduct. So how do you even get the train out of the station with the first idea of what constitutes this? But it is, you have correctly stated the law, and I'm not here to say that we should change the law. I'm simply saying that as a starting point, a lot of accommodations have been made for officers for reasons that always confuse me when there's no duty to protect us, there's no duty to act, there's no duty to investigate, and yet we're giving a lot of immunity to individuals. And so that's just where I want to start, my concept here. And then we get to the idea of, you know, if I can get to it in my brief, the idea that how precisely do I have to find a case that exactly makes out what happened to my client? How precise is that test? Does it have to be one of the literal? I sometimes joke I can't find one on a Tuesday afternoon. Can I find a case from the Tenth Circuit or the United States Supreme Court that says striking a man sitting on a gurney with a broken hand in the face is illegal? What about that same scenario with the person with a broken finger who is restrained, who's kicking and thrashing? Isn't that the question? Whether or not it would be under Hope v. Belts or obvious that you can't hit someone in the face after the person whose upper body is restrained but their legs are not restrained and they are kicking and thrashing? Isn't that the question? Whether it would be only a plainly incompetent officer would have known that you can't hit someone in the face in order to keep from having the individual kick and thrash another officer. There is no doubt that in this case that Travis Salway, after he was put in pain, did kick his legs. Our position is he kicked his legs in pain, that he was trying to remove the weight off of his broken hand, something that the officer was aware was going on. He was aware of the broken hand. Again, I don't mean to go back into this. The court found that the conduct was unreasonable, but there wasn't a prior case. The court found specifically that he was resisting. Your position was he was reacting. He wasn't resisting. Yes, yes. And that's important because the court said he absolutely was reacting. And that's the finding that we have. Or he was resisting, I'm sorry, not reacting. And so dealing with that, what we have is he was resisting and he was kicking and screaming and shouting, cursing, and we basically can't assume that a reasonable officer should have known that he was reacting, not resisting. We have to assume that it was a reasonable officer would expect that he was simply resisting. Does that make sense? I follow you. Are we stuck with those facts? Well, obviously this is summary judgment, and so are there facts to the contrary that the plaintiff stated? And the plaintiff clearly stated I was not resisting. I was trying to get my weight off my hands. When you put me on the stretcher immediately by you and the officer normally. Well, but it's not about what the plaintiff says he was doing. It's what a reasonable officer would have perceived. Right. And that's where the expert comes in and says no reasonable officer would have perceived that this individual was a threat to anyone, that he was completely restrained. It's worth noting that no other officer noted that Mr. Sally was trying to bite Officer Norris. And the court did not accept that fact. You know, the position was I wasn't trying to bite him, and the court assumed that, district court assumed he wasn't trying to bite him for purposes of the district court's analysis. I think the problem, here's where I get frustrated, or this is where I find this issue so difficult. You have the Tenth Circuit, I think, and even the U.S. Supreme Court has a fairly standard test to apply here. Don't hit someone who has submitted themselves to your arrest. And I think you have cases that say if somebody is subdued and not fighting back, if you then go up and punch them in the face, you don't have qualified immunity. But that's not our facts here. It's the fighting back, and that's the characterization I think that was not necessarily, is not merited here, is that Mr. Norris testified specifically that he was not fighting back. And so it ought to be up to the jury to decide what was reasonable for the officer to infer under these, you know, the whole, the totality of the circumstances, and I think that's, I believe that part still exists here in the Tenth Circuit, is that we look to the whole set of facts. We look at what the officer knew and the situation and whether or not his conduct was reasonable and whether or not Mr. Salloway was trying to, would it be reasonable for an officer to infer that he was trying to escape or flee, because it's one of the two prongs of that test, or, and sometimes the court uses, it phrases it differently, and so I can't, it's not always 100% resisting arrest. Sometimes it's resisting. I like to say what we're talking about here is resisting arrest. And so resisting arrest is the ticket out of court for the officer, because if Travis Salloway is objectively resisting arrest, qualified immunity is appropriate. But it is up to the jury to decide whether or not he was in fact resisting arrest or was he not resisting arrest. Was he simply reacting to the pain that the officer put him in? It was a tremendous amount of pain that he put him into. But that's my problem. It's not, that isn't what the juries would decide. Wouldn't they decide whether a reasonable officer in that situation, with him flailing and screaming and shouting, even knowing he had a broken finger, kicking his legs, would a reasonable officer be expected to make a split-second call about motivation? I think the officer has to make a split-second call. He is the supervising officer on the scene. But a reasonable officer might not necessarily be the supervising officer. I get that. Yet in this situation, the reasonable officer we're testing is the man in charge, making these decisions, making the decision to put Travis on his broken hand, making the decision to put all his weight on Travis's broken hand. That's deliberate indifference. That's deliberate indifference to this pain. And then to say, oh, you reacted to the pain I put you into? Now I'm going to punch you for doing it. Don't flinch. Or you get another one. In any event, if the question is whether the law is clearly established, that's really what you need to fine-tune it to. And that means you've got to point us to a Tenth Circuit or Supreme Court case that involves these facts, that someone who is kicking and flailing and they use excessive force. Or they use force that is deemed excessive. Or at least to a case where there's a question and an officer has to make a split-second determination about what the motivation is, which is what you're suggesting. And, you know, I understand your frustration with the test, but it is the legal standard. Well, there is the case that involved hitting the gentleman, maybe it was Pereira, if I've got that right, where the individual was striking someone in the head, maybe on the sidewalk. And so I would simply say a sidewalk versus, you know, a gurney, not necessarily any different. Well, in Pereira, he was completely subdued and they repeatedly tased him. I mean, I see that as not really fulfilling the clearly established requirement. I guess what I'm asking is that the officer has to look at the thrashing and the reality facing him. And that is, does the Supreme Court just simply authorize, as an officer, you can hurt somebody, put them in pain, and if they react to that pain, this becomes a distinguishing factor and now qualified immunity is allowed to your continued hurting them. Well, to play devil's advocate, what other option would you have had the officer do to try to grab the legs? He is kicking and, I mean, we see it in the video, he's kicking and thrashing. Yes. And so you can try to, you know, if I'm trying to subdue someone who's kicking at somebody, I can try to grab the person's legs with the risk that they may succeed in kicking me now that I have gotten myself into closer proximity to his legs that he is trying to utilize to kick the other officers and presumably now me once I try to subdue him through his legs. I'm not sure there was any testimony that he was trying to kick anyone and that the court's finding was that he was not necessarily trying to kick anyone. The thrashing of the legs was occurring. That's 100% for sure. The video, I mean, he is robustly kicking and thrashing. Oh, yeah, he's in tremendous pain. That's for sure. He's been put into tremendous pain. What the officer could do, the simple answer, and I think this is what I asked for and talked about, was just take one half step back. There's no need for any force here. Zero force is needed. A modicum of attention, the tiniest amount of attention to his injuries. For example, when they put him on the stretcher to begin with, they gave him enough room that he could have his hands over to his side. He wasn't sitting on them. The way that the stretcher was organized in an upright fashion didn't allow that. I mean, they could have put him on his side, and they could have done just what they did in the ambulance, and that was, hey, will you just chill out? If we put the can cuffs in front, will you behave yourself? And he said yes. He only reacted the way he did because he was in pain, and the standard that the appellee has to meet is that my client was resisting arrest. And I think that's a fact question for the jury to decide, is whether or not the man was resisting arrest. And if he's not resisting arrest, you're just hitting a man who is otherwise compliant with the arrest, is not a threat to officer safety, isn't trying to flee. And it's a simple test to apply. And it doesn't have to be spelled out in exactitude in every instance. Thank you. Thank you. Mr. Howard. May it please the court, counsel. My name is Peter Howard. I'm a senior assistant attorney general with the Wyoming Attorney General's Office, and I represent Officer Norris in this matter. Would you agree that it was excessive force? I don't agree that it was excessive force, Your Honor. I believe with the gram factors applied in this situation, it was absolutely reasonable for Officer Norris to use empty-handed strikes to subdue Mr. Salway. Punch him in the face and break his nose with three other officers standing around? He's handcuffed on his back in a gurney? Your Honor, I would contest that there are facts. I would contest that Officer Norris, rather than the several other people who punched him in the face, broke his nose that night. Secondarily, Officer Norris was in a position where he was working the gurney with an EMT, with a civilian who's attempting to render medical aid who's trying to control Mr. Salway's feet. Officer Norris's options, being positioned near the front of the stretcher as Mr. Salway lurched towards him, are fairly limited as far as the types of force that he might employ. On top of that, Officer Norris responded to emergency calls from a fellow officer, indicating that they were in duress with this particular person, who had been resistant with officers through the entire arrest process, necessitating multiple uses of force prior to Officer Salway even arriving on the scene. So I do contend that Officer Norris's use of force under the Graham factors, also in light of Mr. Salway's arrest for assault on an officer and a previous fight with the bar owner, even if those are misdemeanors, they are violent offenses, and he had demonstrated a propensity for erratic, violent behavior through the night. Well, could I ask? I'm not sure. It was stated earlier that the district court made a finding on the first problem, on the violation. I don't know that I saw that. I sort of read it more that the district court implicitly assumed perhaps a constitutional violation, but I didn't see real clear findings of fact from the district court about what facts that we're using to decide the second problem, the clearly established problem that the district court very clearly did decide in your favor. But one fact I do think the district court made pretty clear is it said very specifically, he was resisting. He was resisting. That's what he was doing. Basically, he wasn't reacting. He was resisting. So I assume we're stuck with that fact, but then the district court goes on to then talk about the motivation for resisting, and that's where the district court basically decides, you know, you can't really expect a reasonable officer to make a split-second decision about what the motivation was. I was a little confused about whether we were talking about the violation or the clearly established problem, and maybe you can lend something to that. But I did think we were probably stuck with the fact that he was resisting. But that seemed contrary to taking the facts in a light most favorable to the plaintiff, who said essentially he was just reacting to the pain, and the reasonable officer should have known that, knowing he had this busted-up finger and had been laying there quietly subdued. Your Honor, may I? Not really much of a question. Sorry about that. Well, Your Honor, I do believe that the trial court focused more on the question of whether there was established law. Right, right. But to do that, you have to know what facts. The trial court should make findings of facts so we know what we're dealing with when we look to the clearly established law. And that's the part I struggle with in that opinion, is what facts are we dealing with here? I think the facts are fairly clearly established by the video, which was acknowledged by the trial court and was acknowledged. Well, the video, I mean, the critical question that Judge Moritz has raised is motivation, and the video can't answer that. I mean, we can see him thrashing around, but I can't see inside his head. And the real critical question is what would a reasonable officer, knowing he had a broken finger that was causing him extensive pain, that he was handcuffed and that finger was behind his back, that officer then moving him from the gurney or to the gurney, what should a reasonable officer have known about his motivation? But I don't really think we have any findings from the trial court about that. So that's where I struggle a little bit with this whole thing. And, Your Honor, just as you can't read motivation from a video, it's not contested that Travis Salway did not communicate to the officer that he was in pain, that he was trying to move his finger. He testified that he was screaming and cursing. What Mr. Salway hopes to do here is substitute the reasonable officer's impressions with his own uncommunicated subjective impressions. And that's not something that is really supported in the case law. I mean, the purpose of qualified immunity is to protect officers from that exact type of Monday morning quarterbacking. As far as the broken finger goes, there's been no allegation in the complaint or on appeal that Officer Norris setting Mr. Salway on the gurney, on his finger constituted excessive force, even though that was discussed here in oral argument and in the brief. That hasn't been alleged. Well, I think the point is that he was reacting to the pain caused by putting his weight on his broken finger. I don't see it as a separate excessive force claim. I mean, the excessive force claim is related to the punch in the face, as I understand it. Yes, Your Honor, the excessive force claim is in relation to the two strikes, the open-handed strike and the closed-handed strike. One point that Mr. Salway made or his counsel made was that we've got a situation where we're trying to figure out what a reasonable officer would have perceived about what was going on with the thrashing and screaming. Was that really a case where the district court should have stepped in and said, absolutely, it was resisting, and a reasonable officer should have known it was resisting, if that's what the district court found, as opposed to saying, you know what, a reasonable jury could conclude one of two things here and maybe we should kick it to the jury to determine in the first instance what a reasonable officer should have perceived from that situation or would have perceived. Your Honor, I think the case law would support that that is sufficient to be resistance. For example, in Dixon, there's dicta in that case that states that Mr. Dixon turning around and cursing constituted resistance. In Hook Satoki, it was a transfer between cars, and the district court found that there was sufficient resistance to justify, well, the appeals court affirmed that there was sufficient force to justify, I think, four out of six alleged uses of excessive force in that transfer. So I think what you're saying is in this type of scenario where it's a split-second type of decision, it shouldn't really matter what the motivation was or whether a reasonable officer might have even understood that potentially he was just reacting in pain, that the officer is entitled essentially to react by subduing him in whatever way he does. Correct. Correct, Your Honor. He shouldn't have to make a split-second judgment about is he reacting in pain or is he resisting? Is he kicking it all back up again? Is he trying to hurt us? Absolutely not, Your Honor. He just reacts. And even if he's not resisting, he's not subdued. Some of the dangers that exist from Mr. Salway thrashing and kicking exist regardless of the intent. Like I said, there's the EMT on the end of the gurney trying to control his feet who's at risk of being harmed. Mr. Salway himself, if he thrashes, could fall on his face if he's not restrained to that gurney because he does have his hands behind his back. There are harms that could result to individuals, not just Officer Norris, from leaving this individual in a non-subdued, erratic, and violent state. Can I ask you a hypothetical question? What if he had said to Officer Norris, sir, my finger is broken, and then they put his hands under his back, and he then says, and Mr. Salway then exclaims, ouch, I am in excruciating pain, and starts kicking his legs. Are you saying that in that scenario, the officer could first open slap his head, and then when that doesn't succeed in relieving him from kicking and thrashing against the officers, then he can hit him with his fist in his nose. Is that not excessive? Your Honor, as you said, that's a hypothetical. I think there's actually a case law that would suggest that that type of communication from someone who is being arrested. There are several cases where someone says, you're putting weight on my back, and the officer said, deal with it, or the person says, I can't breathe. In those situations, there's a communicated harm. There's an opportunity for the officer to make a different decision. Officer Norris, in his deposition, which was submitted with the evidence on summary judgment, stated if he was given that opportunity, he would have moved. Well, the reason I ask you that is the anomaly here, and this is really to follow up on Judge Moritz's questions earlier, as telling as the video is, Judge McHugh is obviously right, we can't see through the video what's in, you know, first of all, what's being said, or even what's, and certainly what's in anybody's head, and so we do, because this is on the grant of summary judgment, we do view the evidence in the light most favorable to non-movement, and he, you know, has presented evidence through his sworn testimony that he had a broken finger and that the reason he was kicking and thrashing his legs was because he was in excruciating pain, and then under Graham, the defendant then utilizes the resistance that he is attributing to the fact that he is in excruciating pain to resistance, and so if in my hypothetical that would be excessive force, I really don't see why in this situation, from the lens of summary judgment, why it would be anything less than excessive force. Your Honor, the evidence is uncontested, whether taken in the view of light most favorable to the non-movement or not. Mr. Salway testified that he didn't communicate anything. He testified that he was screaming and probably cursing when he lurched toward Judge Moritz. Yeah, and that's why I said, yeah, if I'm yelling and using foul language, which I'm not going to do now, but saying, you know, yes, I am in excruciating pain, ouch, ouch, you know, I've got to take a break, surgeon, you know, to infer from that for some reason that he's kicking and thrashing because he's in excruciating pain. Your Honor, Mr. Salway's finger was broken, the bone protruding from his finger. That happened not related to an action any of the officers had taken. That's not relevant, though, is it? I mean, that's not relevant. If they know and there is evidence that this officer knew that he had this badly broken finger, clearly in pain, why is it relevant how it happened? The relevancy is whether this officer should have known he was breathing and kicking his legs and yelling in pain. Your Honor. And therefore reacted differently, you know, by either, you know. Your Honor, I'm sorry. I apologize. You see what I'm saying? That's the question. I do. What I was getting to, perhaps too slowly, was that with a break like that, Officer Norris isn't the one who can relieve Mr. Salway's pain. He's trying to get Mr. Salway to the people who can at the hospital. Well, he can exacerbate his pain by instead of handcuffing him in front and putting him on his back, handcuffing him behind and then having him lie on his broken finger. I mean, right? He could have exacerbated the pain. Again, that's not the allegation of excessive force here. It doesn't matter if it's the allegation of excessive force. It's part of the totality of the circumstances in determining what a reasonable officer would have understood. And Mr. Salway had been resistant, had been combative with officers up until that point. There was never the opportunity to handcuff him in front of his body. In summary, the controlling issue here is also that Officer Norris, there is no case law previous to 2018 or subsequent that would have put him on notice that the actions he was taking were unconstitutional. May I finish this thought? You can finish that thought. There is a standard. The more egregious the violation, the less analogous the case needs to be. This is not the use of deadly force. This is not a use of pepper spray or tasing. This is a use of open-handed strikes. One open-handed and one closed. One open-handed and one closed, Your Honor. And I believe the case would need to be fairly analogous to apply it to Officer Norris. Thank you. Thank you. I think the appellant had a rebuttal time. Isn't that right, Kevin? All right. Thank you. Very well presented by both sides. This matter will be submitted.